We have one motion to be argued, United States v. Aiyer, and so we'll hear first from Mr. Klotz. Thank you, Your Honor. My client, Akshay Aiyer, is scheduled to surrender to a federal correctional institute in central Pennsylvania on Friday. We hope that Your Honors will be able to decide this bail application before then, but if that's not possible, we ask that you extend his surrender date until some reasonable time after you've decided the motion. The issue that the bail application raises is really a single issue. Does our appeal on the merits raise a substantial question of law or fact? And it's not our burden to establish a substantial question to show that we're likely to prevail on appeal, simply that we have raised a substantial question and that if that question were decided in our favor, it would require a reversal or a new trial. Now we have argued all of the substantial questions that we think the appeal raises in our briefs, and what I'd like to do is simply highlight points that I want to make certain don't get lost. And I'm going to take this a little out of order and start with the juror misconduct issue because there's a case that I apologize we did not cite in our briefs. We cited it below, but it fell on the cutting room floor on appeal, but it's an important case for Your Honors to consider, and that is United States v. Rescoe 3F3-684. That is a case, 3rd Circuit, not 2nd Circuit, but issues here where a judge began an investigation of potential juror misconduct, but terminated the investigation without thoroughly following up on whether in fact there had been misconduct in the judgment of the 3rd Circuit. And what the 3rd Circuit did in that case is said, I have to reverse and order a new trial even though we don't know for sure whether there was prejudice to the defendant, I have to do that because the reason we don't know for sure is that the judge terminated the investigation prematurely. And we contend that that's what happened here, and that here as in Rescoe, a new trial is the remedy. Here the issue is there is such a stark conflict between the accusations of juror number six who wrote the letter and the testimony and interview of juror number three who denied the accusations in the letter that we contend it was an abuse of discretion for the court to make a credibility finding without hearing in person from juror number one. Juror number six, I apologize. So that's juror misconduct. On the main issue, which is our contention that the judge failed to consider whether the conducted issue in the case was governed by the per se rule or the rule of reason, I want to highlight two points. First, it's clear that Judge Kodal was troubled by the fact that in his judgment there was no precedent for the review that we asked him to do. Most of the cases we cited were civil cases, and the judge was bothered by the procedural posture in which he could make this decision and by the absence of any authority in criminal case law directing him to do what we asked him to do. But I submit that under the Miller case, which this court approved in Randell, the very fact that there is no controlling Second Circuit precedent on this makes this a novel issue that is itself a substantial question under the test in Miller. And we think the very fact that there isn't compelling, not compelling, but there isn't controlling Second Circuit criminal authority is reason alone to create a substantial question. The second thing I want to address on this is the government's contention that Judge Kodal did in fact make the determination we asked him to and concluded that the conducted issue was per se. If you look at his opinions during and after trial, you will never find him saying that. And in fact, the whole thrust of his argument that there's no procedural mechanism in a inconsistent with the notion that he actually did it. But for sure, he did not discuss any of our arguments about why the conduct should be considered under the rule of reason. And even if he had conducted the analysis and reached the conclusion, it would be a ruling of law that your honors would consider de novo. The sentence was eight months? The sentence was eight months. And there's no issue regarding risk of flight or danger to the community? There is not. Mr. Iyer has been released on bail for the entirety of the case. He's always complied with the terms of bail. The judge approved him to continue on bail after the jury returned its verdict before sentencing and the judge, both then and on this motion, found that he's not a risk of flight or danger to the community. And this then, let me get to my conclusion and wrap up quickly. As I said, the issue really is just do we raise a substantial question on appeal? But we think that issue has to be addressed in context. If Mr. Iyer is required to surrender on Friday, there is a high likelihood that he will serve his entire sentence before this court can decide his appeal. He will serve that sentence at the height of a runaway pandemic, the worst and most dangerous time to send a first-time nonviolent offender to prison. And at the very least, he will serve the first three weeks of that sentence in solitary confinement quarantine. I've got a question. Yes. With respect to the jury misconduct issue, what was the total stated reason for not undertaking the sort of analysis and questioning that you sought? His stated reason throughout the investigation was inquiring into possible jury misconduct is a very sensitive matter. We don't want to make jury service any more burdensome than it otherwise is. And it's only with reluctance that you call people in to examine them after a trial has concluded. Now, our response... As you know, Judge Koto is, with respect to everyone else, extremely diligent when it comes to these issues. So I'd like to know, I mean, his reluctance signals something to me. Honestly, Your Honor, I can't explain it. It seemed to us on the defense side that juror number six had put his hand up and deliberately injected himself into the process. So if ever there were someone who you could call in and interview, and it would not be unduly disruptive, I would have thought it was juror number six. And it just seems to me that that should have been done. And Judge Koto simply accepted, as a matter of credibility, juror number three's denials, which frankly I thought were entirely self-serving. And that was the end of it. All right. Thank you. But could I just make my final point? In addition to a sentence of imprisonment, Judge Koto imposed a $150,000 fine. Mr. Iyer has paid that fine. He can get that back if he is successful on appeal. He can't get the eight months back. Thank you. We'll hear from the governor. Thank you, Your Honors. Mary Helen Limberley for the United States. May it please the Court. I'd like to start with the standard applicable. Can you speak up? Yes. I'd like to start with the standard applicable to the bail motion, which, as Mr. Klotz correctly pointed out, is that the Court has to find there is a substantial question. The bail statute is mandatory in its language, and it says that the defendant shall be detained unless the defendant shows a substantial question on appeal. So with respect, the duration of his sentence and health considerations are only factors for this Court's consideration if the defendant shows a substantial question, which he does not. One of the issues is that the issue of whether the rule of reason or per se rule applies is not one that we have, certainly in the criminal context, resolved. And the novelty of the question itself raises a substantial issue that might warrant a bail pending appeal. I would disagree that this is something this Court has not resolved in the criminal context. Certainly, with respect to bid rigging, Copper said that bid rigging is per se illegal, and I think it's important to look at what the defendant is actually arguing here. He's saying that my conduct should not be considered price fixing or bid rigging because it was in fact pro-competitive or in fact was not anti-competitive. Well, what the Coney vacuum, Copper's ample precedent that we cited in our opposition says is those are not considerations for the jury. What the per se rule does is say, as a matter of law, if you engage in price fixing or bid rigging among competitors, that is, as a matter of law, anti-competitive. And therefore, any factual arguments or whether it is in fact anti-competitive or is in fact instead pro-competitive are ill-relevant. Now Mr. Klotz says that Judge Kodal struggled with this issue because it had not clearly been applied in a criminal context. Is he right about that or is he wrong? He's wrong. What Judge Kodal said was, I can't, prior to trial, assess the government's evidence to determine whether it has raised a genuine issue of material facts about whether this conspiracy exists. That is not a procedural mechanism available in a criminal case, which this court confirmed in Sampson. That is a question for the jury to decide whether the facts as charged by the government exist. And I, the court, will instruct you on what per se price fixing and bid rigging is. And it's up to the jury to determine whether the government have proven the facts that match what I instruct you per se price fixing and bid rigging is. But I think no better than turning to what the defense said in its reply at 2, which was when it identified what the district court should have done but allegedly did not do. The court, this is a quote, must nonetheless determine whether the object of the charged conspiracy was itself per se unlawful. Well, if you look at the June 3, 2019, motion to dismiss hearing, page 7, at lines 1 through 3, which we quote in our opposition from IHRS counsel, that quote, we have an indictment that alleges a course of conduct, the ends of which is undisputed, are per se violations of the law. So the court did exactly this. Given the length of the sentence, only eight months, the fact that he's not a flight risk or a danger to the community, the circumstances of the pandemic, don't the equities weigh in favor of granting a bail pending appeal? I think that you only reach that question if you just determine. Whether something is a substantial question is a fuzzy thing. I mean, do we not look at the equities and in deciding whether there is a substantial enough question? No, I think, in fact, the mandatory language of the bail statute says that it might only be a substantial question, but one that is likely to result, if resolved in the defendant's favor, in a new trial or reversal of conviction. So I think that there is the technicality and then there are the practical realities, which is that on the off chance that you're wrong and that Mr. Klotz is right, five, six, seven months from now, this man will have spent almost the entirety, if not the entirety, of his time in prison and a panel will then resolve it in his favor, but the damage is done. What is the practical harm? So there's no risk of flight, he's not a danger to the community. What is the practical harm of letting him out for eight months or whatever the amount of time is? It could be three months if it's expedited, I don't know. What is the harm? I believe the Randall case, excuse me, from this court, said that the presumption of bail post-conviction serves two purposes. Both is what we've been talking about, which is the safety, assuring a, you know, dangerous individual isn't released or one he would not, in fact, report to jail, but it's also respect for a judgment of conviction. And I'll quote Miller, once a person has been convicted and sentenced to jail, there is absolutely no reason for the law to favor release pending appeal or even permit it in the absence of exceptional circumstances. And I don't think that means that the defendant can leapfrog over the statutory requirements, which are mandatory in nature, just by quoting equitable reasons. And the district court analyzed this question very closely below and said, look, there's mechanisms for health reasons for you to seek compassionate release, if that's what you elect to do. But those aren't factors that the statute allows for bail pending appeal. And if I might address the juror misconduct issue, I know that Judge Lillie, you asked what the district court, what reason you gave for not interviewing also juror number six. And this is on the opinion at page 18 where the court said, moreover, even crediting juror number six's hearsay account that some information came to the attention of the jury in the form of information about defense counsel. Such extraneous information does not rise to the level that would be likely to influence a typical juror. So the court held that even if I believe everything juror number six says, it doesn't reach the required to grant relief. Therefore, there's no need for me to interview juror number six. Which you would have no objection, I would hope if we I mean, let's suppose we decide amongst ourselves that we need a little time just to dig in and decide this motion. And if we did that and postponed, just put a stay on everything while we dig into this, would you have an objection to that? Respectfully, we don't think that there's any likelihood of success on the appeal. But you know the case much better than we do. I mean, that's and it's a motion that was brought quickly and it's lying here on top of a very full schedule. So I just think it'd be nice for us to get it right. We would object given the presumption in favor of bail pending appeal. But obviously, the court can overrule our objection. Understood. All right. Thank you both. Well, we'll certainly rule in terms of Friday, before Friday. You know, it's certainly possible we'll do as Judge Saks says, but you'll hear from us one way or another before Friday and otherwise we will reserve decision. Thank you both. Thank you, Your Honor. All of you.